(101) CITATION: PETITION FOR DAMAGES; 191108-0264-2

24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

DAN-GULF SHIPPING INC, ET AL
versus
DEEPAK N JAGTIANI, ET AL

Case: 801-191 Div: "I"
P 1 DAN-GULF SHIPPING INC

To: LATA D. JAGTIANI
3548 TOLMAS DRIVE
METAIRIE LA 70002

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the PETITION FOR DAMAGES of which a true and correct copy accompanies this citation, or make an appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for the Parish of Jefferson, State of Louisiana, within FIFTEEN (15) CALENDAR days after the service hereof, under penalty of default.

This service was requested by attorney PETER B. SLOSS and was issued by the Clerk of Court on the 8th day of November, 2019.

/s/ Wendy R. Gaudet
Wendy R. Gaudet, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk of Court

_____ SERVICE INFORMATION _____

(101) CITATION: PETITION FOR DAMAGES; 191108-0264-2

Received:_____ Served:_____ Returned:_____

Service was made:
___ Personal    ___ Domicilary _____

Unable to serve:
___ Not at this address    ___ Numerous attempts _____ times
___ Vacant                 ___ Received too late to serve
___ Moved                  ___ No longer works at this address
___ No such address        ___ Need apartment / building number
___ Other _____

Service: $_____  Mileage: $_____  Total: $_____

Completed by:_____ # _____
              Deputy Sheriff
Parish of:_____

Thomas F. Donelon Courthouse : 200 Derbigny St. ; Gretna LA 70053

Page 1 of 1

**Exhibit A Page 1 of 18**

835

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

### STATE OF LOUISIANA

NO. 801-191          SECTION "I"

**DAN-GULF SHIPPING, INC., CAYTRANS BBC, LLC
And CAYTRANS PROJECT SERVICES (AMERICAS), LTD.**

### VERSUS

**DEEPAK N. JAGTIANI, LATA D. JAGTIANI, AND PAYCHEX, INC.**

FILED: _____     _____
                                                                        Deputy Clerk

### PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come plaintiffs, Dan-Gulf Shipping, Inc. ("Dan-Gulf"), Caytrans BBC, LLC ("Caytrans BBC"), and Caytrans Project Services (Americas), Ltd. ("Caytrans Americas"), who file this Petition for Damages and respectfully represent as follows:

1.

Dan-Gulf is a Louisiana corporation with its principal place of business in Metairie, Louisiana.

2.

Caytrans BBC is a Louisiana limited liability company with its principal place of business in Metairie, Louisiana.

3.

Caytrans Americas is a Louisiana corporation with its principal place of business in Metairie, Louisiana.

4.

Made defendant herein is Deepak "Jack" Jagtiani (hereinafter referred to individually as "Jack"), a person of the age of majority that is domiciled in and a resident of Jefferson Parish, upon information and belief.

1



11/08/2019 10:08:10 CERTIFIED TRUE COPY - Pg:1 of 18 - Jefferson Parish Clerk of Court - ID:19123617

24th E-Filed: 11/05/2019 17:31:34 Case: 801191 Div:I Atty:017142 PETER B SLOSS

**Exhibit A Page 2 of 18**

5.

Made defendant herein is Lata D. Jagtiani (hereinafter referred to individually as "Lata"), a person of the age of majority that is domiciled in and a resident of Jefferson Parish, upon information and belief. Lata and Jack are married.

6.

Made defendant herein is Paychex, Inc. ("Paychex"), a foreign corporation registered to do business in Louisiana, whose principal Louisiana business establishment is located in Jefferson Parish, at 401 Whitney Avenue, Gretna, Louisiana.

7.

Venue is proper in this Honorable Court under Article 42(1) and 42(4) of the Louisiana Code of Civil Procedure, as the individual defendants are domiciled in Jefferson Parish and the corporate defendant maintains its principal business establishment in Jefferson Parish. Alternatively, venue is also proper under Article 74, as the harm was sustained by plaintiffs in Jefferson Parish, and Article 76.1, as the contract between Paychex and Dan-Gulf concerned work to be performed in Jefferson Parish.

## Pertinent Facts

8.

From January 23, 2007 through February 4, 2019, Jack was employed by Dan-Gulf as Company Controller.

9.

In his role as Company Controller, Jack was entrusted with and responsible for Dan-Gulf's financial and accounting records. He was also responsible for financial accounting for other companies, including Caytrans Americas and Caytrans BBC, and had access to their bank accounts through a single login user name and password with the bank.



2

10.

In addition to managing its own company, Dan-Gulf served as managing agent for Caytrans BBC and Caytrans Americas with respect to, *inter alia*, those companies' financial, accounting and management functions.

11.

Jack's duties included, but were not limited to, maintaining Dan-Gulf's, Caytrans BBC's and Caytrans Americas' general ledgers, preparing financial statements, monitoring cash flows, preparing weekly financial reports, and effecting Dan-Gulf's payroll.

12.

As Controller, Jack had access to Dan-Gulf's, Caytrans BBC's and Caytrans Americas' accounts, and control over their financial records.

13.

Since February 23, 1997, Dan-Gulf has contracted with Paychex for payroll services. In conjunction with that contract, Paychex was responsible for processing twice-monthly electronic funds transfer ("EFT") transactions for "such amounts as are necessary to pay [Dan-Gulf's] employees."

14.

Paychex had on file complete and accurate information as to the authorized annual salaries of each and every Dan-Gulf employee, including Jack.

15.

To issue the paychecks for Dan-Gulf's employees, Paychex would directly deduct money each pay period from Dan-Gulf's account with Whitney Bank, in an amount that covered the payroll salaries, tax distributions, 401(k) employee and employer contributions, and other typical payroll deductions.



3

16.

Until sometime in 2016, Paychex also served as plan administrator for Dan-Gulf's 401(k) plan.

17.

In his role as Company Controller, Jack was responsible for overseeing payroll processing through Paychex, and was responsible for providing Paychex with the applicable wage and salary information for Dan-Gulf's employees each pay period.

18.

Upon information and belief, Jack communicated with Paychex employees and/or representatives exclusively via telephone concerning the payroll amounts to be paid for employees' salaries each pay period.

19.

On January 15, 2019, Dan-Gulf's and Caytrans' management instructed Jack to provide complete financial information to them after Jack had advised management that the companies' cash on hand was insufficient to meet certain obligations. Upon information and belief, shortly thereafter, Lata left for India to handle, among other things, "money matters."

20.

On February 5, 2019, Jack abruptly resigned his position via email, and never returned to work at Dan-Gulf.

21.

Upon Jack's sudden resignation, coupled with his statement regarding the companies' cash flow, Dan-Gulf's management began investigating Jack's role with the company financials, including his responsibility with payroll, with the investigation undertaken both on its own behalf and on behalf of its principals, Caytrans BBC and Caytrans America.



4

22.

Dan-Gulf's investigation first revealed that the salary Jack took for the month of January 2019, through Paychex, was approximately $65,000 higher than his authorized salary.

23.

Dan-Gulf's investigation and review ultimately revealed that since 2009, Jack had repeatedly and regularly obtained from Paychex salary and bonuses for himself that far exceeded his authorized salary and bonuses on file with Paychex and, in fact, far exceeded the salary and bonuses being paid to any other employees, including Dan-Gulf's CEO, who was also its principal shareholder.

24.

Dan-Gulf's investigation has revealed that from 2009 until February of 2019, Jack embezzled a currently-known total amount of approximately $7,000,000 from Dan-Gulf, Caytrans BBC and/or Caytrans America, in the form of unauthorized and clearly excessive salary and unearned bonuses that far exceeded what Paychex was authorized to pay him pursuant to the information it had on file. These unauthorized takings occurred multiple times each year from 2009 to 2019.

25.

On or about February 7, 2019, after it was discovered that Jack had, through Paychex, taken millions of dollars in unauthorized salary overpayments for at least several years, Dan-Gulf contacted Paychex to inquire why the company controller was receiving payments so strikingly and obviously beyond his authorized compensation.

26.

Paychex informed Dan-Gulf that Jack himself instructed Paychex to pay him the unauthorized irregular amounts that well exceeded his salary, and, despite having on file information as to what Jack was supposed to receive in compensation, Paychex complied with Jack's instructions without verifying those instructions with Dan-Gulf's management.

5

27.

In addition, Jack also manipulated his employer's contribution to his 401(k) retirement account, such that the company was matching his employee contribution by 100%, instead of according to the company's stated "employer match" percentage that was applicable to all of its employees (a maximum of 4%) and well in excess of the legal limits for employer and employee contributions applicable to such plans.

28.

Despite managing Dan-Gulf's payroll for over twenty (20) years, and despite having information that Jack was requesting salary and bonus payments far in excess of what he was supposed to be paid, Paychex never contacted Dan-Gulf's management to verify the instructions Jack was giving them for his own salary and bonus payments, and never alerted Dan-Gulf's management to the irregularities concerning Jack's paycheck amounts. And despite also managing the company's 401(k) plan until 2016, Paychex also never alerted Dan-Gulf's management to the issue of excessive "employer match" contributions to Jack's retirement account.

29.

Dan-Gulf's investigation further revealed that Jack was able to hide his embezzlement from plaintiffs' management during the aforementioned period by cleverly and elaborately manipulating Dan-Gulf's and Caytrans' software and financial reports, spreadsheets and records that he submitted to company management. Only with great effort and expense were forensic accountants hired by Dan-Gulf able to reconstruct Jack's maneuvers that enabled him to drain Dan-Gulf's account, through Paychex, without alerting Dan-Gulf's management.

30.

To date, plaintiffs have not been able to recover any of the stolen funds from Jack and/or Lata.



6

11/08/2019 10:08:10 CERTIFIED TRUE COPY - Pg:6 of 18 - Jefferson Parish Clerk of Court - ID:19123617

**Exhibit A Page 7 of 18**

31.

Upon information and belief, Lata was aware of and complicit in Jack's scheme to embezzle the funds from plaintiffs, and both Jack and Lata (hereinafter collectively referred to as "the Jagtianis") have benefitted from the stolen funds and used them to gamble, make purchases, investments and/or other acquisitions for their personal benefit. Moreover, upon information and belief, the Jagtianis have transferred a substantial amount of the stolen funds to one or more banks or financial institutions or other locations outside the United States in an effort to conceal and retain the proceeds of their malfeasance and misconduct.

## Causes of Action

### I. Fraud claim against Jack and Lata Jagtiani

32.

Plaintiffs allege a cause of action against Jack and Lata Jagtiani for fraud under La. Civil Code articles 1953 *et seq.* and 2315 *et seq.*, and hereby incorporate the factual allegations contained within Paragraphs 8 through 31 herein.

33.

As was discovered in February of 2019, Jack Jagtiani intended to and did defraud Dan-Gulf, Caytrans BBC and/or Caytrans America over the course of ten years, seeking to gain an unjust monetary advantage for himself and correspondingly causing substantial financial losses to plaintiffs.

34.

In his role as Company Controller with the plaintiff companies since 2007, Jack established a relationship of confidence and trust with management that justifiably induced them to rely on his representations.

35.

Jack's specific intent to defraud is established by his course of conduct in: covertly transferring funds electronically between the companies' Whitney Bank accounts;



7

manipulating the financial books and records of the respective companies; misrepresenting the companies' financial status to cover his scheme; altering the applicable employer match percentage to increase his retirement account; repeatedly communicating and receiving egregiously inflated payroll information to Paychex so as to overpay himself significantly; and other actions that will be established at the trial of this matter.

36.

Plaintiffs further allege that Lata was aware of and complicit in Jack's fraud and knowingly enjoyed the fruits of Jack's fraud and is therefore herself liable to plaintiffs for fraud.

37.

Considering the foregoing, plaintiffs are entitled to judgment against Jack and Lata Jagtiani for all damages resulting from their fraud, including but not limited to the money taken, in an amount to be determined at the trial of this matter, plus legal interest from the date of judicial demand, all costs and attorneys' fees under Article 1958.

## II. Conversion claim against Jack and Lata Jagtiani

38.

Plaintiffs allege a cause of action against Jack and Lata Jagtiani for conversion, and hereby incorporate the factual allegations contained within Paragraphs 8 through 37 herein.

39.

The intentional actions described in the foregoing sections establish that Jack and Lata acquired possession of plaintiffs' monies in an unauthorized manner, transferred funds without authority, removed funds from plaintiffs' possession with the intent to permanently deprive them of those funds, and withheld possession of the stolen funds from the rightful owners (plaintiffs).



8

11/08/2019 10:08:10 CERTIFIED TRUE COPY - Pg:8 of 18 - Jefferson Parish Clerk of Court - ID:19123617

Exhibit A Page 9 of 18

40.

Those intentional actions described above also evidence an intent to exercise control over the money that is inconsistent with plaintiffs' rights, with no lawful justification for the acts.

41.

To date, Jack and Lata have not returned any of the money that they took in an unauthorized manner.

42.

Considering the foregoing, plaintiffs are entitled to judgment against Jack and Lata Jagtiani for all damages resulting from their conversion, including but not limited to the money taken, in an amount to be determined at the trial of this matter, plus legal interest from the date of judicial demand, all costs and attorneys' fees.

### III. Conspiracy claim against Jack and Lata Jagtiani

43.

Pursuant to Civil Code article 2324(A), plaintiffs allege a cause of action against the Jagtianis for conspiracy to commit fraud and/or conversion and/or other offenses, and hereby incorporate the factual allegations contained within Paragraphs 8 through 42 herein.

44.

Jack Jagtiani's unauthorized taking of Dan-Gulf, Caytrans BBC and/or Caytrans America funds constitutes theft under Louisiana law, as well as conversion and unjust enrichment as set forth herein.

45.

Upon information and belief, an agreement existed between Jack and Lata Jagtiani to embezzle money from Dan-Gulf, Caytrans BBC and/or Caytrans Americas, with the intended outcome of their personal monetary gain. Upon information and belief, Jack and Lata maintained joint checking accounts and filed joint tax returns.

9

46.

As set forth in the preceding paragraphs, the illegal and/or tortious acts of theft, and/or conversion were committed.

47.

Those illegal and/or tortious acts caused harm to plaintiffs, in the form of significant financial loss.

48.

Considering the foregoing, the Jagtianis' conspiracy to commit fraud and/or conversion and/or other offenses entitles plaintiffs to judgment against them for all damages resulting from the conspiracy, including but not limited to the money taken, in an amount to be determined at the trial of this matter, plus legal interest from the date of judicial demand, all costs and attorneys' fees.

### IV. Claim against Jack and Lata Jagtiani under the Louisiana Racketeering Act

49.

Pursuant to Louisiana Revised Statute 15:1356, plaintiffs allege a cause of action against the Jagtianis for civil remedies related to the Jagtianis' engagement in racketeering activity and violations of La. R.S. 15:1353 that harmed plaintiffs, and hereby incorporate the factual allegations contained within Paragraphs 8 through 48 herein.

50.

As evidenced by the foregoing, Jack and Lata Jagtiani committed, attempted to commit and/or conspired to commit violations of La. R.S. 15:1353.

51.

The relationship between Jack and Lata Jagtiani is clear, as they are husband and wife, and upon information and belief, they acted in concert and with a common purpose with respect to the unauthorized taking of plaintiffs' monies and benefitted in concert as a result of same.



10

11/08/2019 10:08:10 CERTIFIED TRUE COPY · Pg:10 of 18 · Jefferson Parish Clerk of Court - ID:19123617

52.

Upon information and belief, Jack and Lata Jagtiani engaged in the "racketeering activity" under La. R.S. 15:1352 by, among other things, engaging in theft under La. R.S. 14:67 by misappropriating and taking things of value belonging to others and/or engaging in money laundering under La. R.S. 14:230 by (*inter alia*) conducting financial transactions involving proceeds derived from criminal activity as well as receiving and acquiring proceeds derived from criminal activity.

53.

Upon information and belief, Jack and Lata Jagtiani have engaged in prohibited activities under La. R.S. 15:1353, including but not limited to knowingly receiving proceeds derived from criminal activity to use and/or invest for themselves or for the acquisition of immovable property.

54.

Jack and Lata Jagtiani's racketeering activity constitutes a pattern under La. R.S. 15:1352(B), as the same theft and/or money laundering activity occurred far more than two (2) times over the course of 2009 through 2019, and on many occasions each year.

55.

Considering the foregoing, plaintiffs are entitled to judgment against Jack and Lata Jagtiani under the Lousiana Racketeering Act for their violations of La. R.S. 15:1353 that harmed plaintiffs to the extent of approximately $7,000,000. Under La. R.S. 15:1356(E), plaintiffs are entitled to three times the actual damages sustained, as well as attorneys' fees, costs of the investigations performed and litigation costs to be incurred in the present proceeding.

V. *Unjust Enrichment claim against the Jagtianis*

56.

In the event plaintiffs have no other remedy at law against the Jagtianis at the trial of this matter, plaintiffs allege a cause of action against Jack and Lata Jagtiani for unjust

11

11/08/2019 10:08:10 CERTIFIED TRUE COPY - Pg:11 of 18 - Jefferson Parish Clerk of Court - ID:19123617

**Exhibit A Page 12 of 18**

enrichment under La. Civil Code articles 2298 and 2299, and hereby incorporate the factual allegations contained within Paragraphs 8 through 55 herein.

57.

As a result of the actions described in the foregoing paragraphs, Jack and Lata Jagtiani were enriched, while plaintiffs were correspondingly – and significantly – impoverished.

58.

Jack and Lata Jagtiani had no justification for the enrichment, which was a result of unauthorized takings.

59.

Considering the foregoing, plaintiffs are entitled to judgment against the Jagtianis for all damages resulting from their unjust enrichment, including but not limited to the money taken, in an amount to be determined at the trial of this matter, plus legal interest from the date of judicial demand, all costs and attorneys' fees.

### VI. Breach of Contract, Duty of Good Faith and Fair Dealing, and Implied Warranty of Workmanlike Service against Paychex

60.

Plaintiffs allege a cause of action against Paychex for breach of contract, and hereby incorporate the factual allegations contained within Paragraphs 8 through 59 herein.

61.

On or about February 23, 1997, Dan-Gulf and Paychex entered into an agreement for Paychex to provide Dan-Gulf with payroll-related services for Dan-Gulf (hereinafter referred to as "the Contract"). Dan-Gulf entered into this Contract on its own behalf, and as agent on behalf of Caytrans BBC and Caytrans America, as both Dan-Gulf and Caytrans funds were utilized for said payroll services.



12

62.

Dan-Gulf and Paychex also subsequently entered into an agreement for Paychex to serve as plan administrator for Dan-Gulf's 401(k) plan.

63.

Under the Contract, Paychex had obligations, *inter alia*, to process the company's payroll taxes and to process EFT transactions for its employees' twice-monthly paychecks.

64.

Between 2009 and 2019, Paychex repeatedly issued unauthorized overpayments to Jack Jagtiani from Dan-Gulf's accounts multiple times each year, and erroneously overpaid Dan-Gulf's payroll taxes correspondingly.

65.

Despite notice that Jack was requesting and receiving salary and bonuses far in excess of his authorized compensation, Paychex never alerted Dan-Gulf's management to these irregularities.

66.

After discovery of Jack's theft in early 2019, Dan-Gulf's management notified Paychex, but Paychex has refused to take any action to rectify its failures.

67.

At a minimum, Paychex breached this Contract by knowingly processing unauthorized EFT transactions for payments to Jack Jagtiani and by failing to properly handle Dan-Gulf's payroll taxes.

68.

Paychex additionally failed to provide the contracted-for services in a workmanlike and professional manner.



13

11/08/2019 10:08:10 CERTIFIED TRUE COPY - Pg:13 of 18 - Jefferson Parish Clerk of Court - ID:19123617

**Exhibit A Page 14 of 18**

69.

Moreover, by virtue of its actions and inactions described herein, Paychex generally failed to adhere to its duties of good faith and fair dealing inherent in contracting.

70.

Paychex's breach of contract damaged plaintiffs monetarily, and significantly.

71.

Considering the foregoing, plaintiffs are entitled to judgment against Paychex for all damages resulting from its breach of contract, breach of implied warranty, and/or breach of duty of good faith and fair dealing in an amount to be determined at the trial of this matter, plus legal interest from the date of judicial demand, all costs and attorneys' fees.

### VII. Negligence against Paychex

72.

Plaintiffs allege a cause of action against Paychex for negligence, and hereby incorporate the factual allegations contained within Paragraphs 8 through 71 herein.

73.

Paychex holds itself out as an expert provider of payroll services, and induces clients to utilize its services on those grounds.

74.

As a provider of those services, Paychex owed to its client Dan-Gulf, as well as Dan-Gulf's principals, a duty of reasonable care outside its contractual duties. Paychex additionally owed a duty of care to Dan-Gulf in light of its role as 401(k) plan administrator for Dan-Gulf until 2016.

75.

Between the years 2009 and 2019, Paychex breached its duty of reasonable care in the following non-exhaustive ways:



14

a. Failing to adequately supervise Dan-Gulf's accounts and transactions;
b. Failing to properly review Dan-Gulf's payroll transactions for which it was responsible;
c. Failing to alert Dan-Gulf to irregular or suspicious transactions;
d. Failing to properly administer Dan-Gulf's 401(k) plan and the employer match contributions to same;
e. Failing to have appropriate protocols in place to identify discrepancies and errors in payroll transactions;
f. Failing to identify numerous obviously fraudulent withdrawals over a ten-year span that were clearly excessive for the very individual submitting those requests for same;
g. Failing to implement adequate security protocols to protects its clients' payroll process;
h. Failing to adequately investigate and/or examine unusual payroll tax amounts or withholdings;
i. Failing to adequately supervise its employees so as to uncover frauds perpetrated on its clients; and
j. Any other negligent or grossly negligent acts established at the trial of this matter.

76.

As a result of Paychex's breach of its duties, Dan-Gulf and its principals suffered substantial monetary damage.

77.

Considering the foregoing, plaintiffs are entitled to judgment against Paychex for all damages resulting from its negligence, including but not limited to the money taken, in an amount to be determined at the trial of this matter, plus legal interest from the date of judicial demand, all costs and attorneys' fees.

78.

Moreover, it is hard to imagine that Jack could have requested and received so many obviously excessive paychecks without one or more Paychex employees being complicit in Jack's malfeasance, conversion and fraud.



15

11/08/2019 10:08:10 CERTIFIED TRUE COPY - Pg:15 of 18 - Jefferson Parish Clerk of Court - ID:19123617

**Exhibit A Page 16 of 18**

79.

In the event the evidence reveals that one or more employees or representatives of Paychex knew of or was involved in Jack Jagtiani's theft, fraud and conversion, plaintiffs reserve the right to allege additional causes of action against Paychex, including but not limited to conspiracy to commit fraud and/or conversion and/or racketeering, pursuant to Civil Code article 2324(A).

WHEREFORE, plaintiffs, Dan-Gulf Shipping, Inc., Caytrans BBC, LLC and Caytrans Project Services (Americas), Ltd., pray:

1. That defendants be served and cited to appear and answer the allegations of this Petition for Damages;

2. That after all legal delays, a judgment be rendered herein in favor of plaintiffs and against defendants, in solido, for all such damages which may be proven at trial and are deemed reasonable, together with costs, legal interest from the date of judicial demand, penalties and attorneys' fees; and

3. For all other general and equitable relief available to plaintiffs under the premises.

Respectfully submitted,

MURPHY, ROGERS, SLOSS,
GAMBEL & TOMPKINS

Peter B. Sloss (#17142)
psloss@mrsnola.com
Tarryn E. Walsh (#36072)
twalsh@mrsnola.com
701 Poydras Street, Suite 400
New Orleans, Louisiana 70139
Telephone: (504) 523-0400
Facsimile: (504) 523-5574
*Attorneys for Dan-Gulf Shipping, Inc.,*
*Caytrans BBC, LLC and*
*Caytrans Project Services (Americas), Ltd.*


11/08/2019 10:08:10 CERTIFIED TRUE COPY - Pg:16 of 18 - Jefferson Parish Clerk of Court - ID:19123617

**Exhibit A Page 17 of 18**

PLEASE ISSUE CITATION AND SERVE:

Deepak N. Jagtiani
3548 Tolmas Drive
Metairie, LA 70002

Lata D. Jagtiani
3548 Tolmas Drive
Metairie, LA 70002

Paychex, Inc.
Through its registered agent, CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

4848-2275-6524, v. 1

24th E-Filed: 11/05/2019 17:31:34 Case: 801191 Div:I Atty:017142 PETER B SLOSS



11/08/2019 10:08:10 CERTIFIED TRUE COPY - Pg:17 of 18 - Jefferson Parish Clerk of Court - ID:19123617

**Exhibit A Page 18 of 18**